IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE GUARDIANSHIP OF JAIME G.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE GUARDIANSHIP OF JAIME G., A MINOR CHILD.

ANA D., GUARDIAN, APPELLEE,

V.

MARIA G. AND JOSE G., APPELLEES, AND JOHN P. BEAUVAIS, JR.,
GUARDIAN AD LITEM, APPELLANT.

Filed September 26, 2017.    No. A-16-895.

Appeal from the County Court for Dakota County: KURT RAGER, Judge. Affirmed.

John P. Beauvais, Jr., guardian ad litem, appellant pro se.

No appearance for appellees.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

The county court for Dakota County appointed a guardian for Jaime G. after his parents returned to Mexico without him. Jaime's guardian ad litem (GAL) appeals. The GAL does not challenge the guardianship, but claims the county court erred by failing to find that Jaime had been abandoned by his parents. We affirm.

BACKGROUND

On May 3, 2016, Ana D. filed a "petition for appointment of a guardian for a minor," and asked the court to appoint her to serve as the guardian for Jaime. Ana alleged Jaime was a minor child, born in April 2001; on April 30, 2016, his parents abandoned him by returning to Mexico with no intention of returning to the United States to care for him; reunification of Jaime with his

- 1 -

parents "is not viable" due to the abandonment; and it is not in his best interests to return to Mexico because his parents are unable and unwilling to care for him. Ana further alleged that she has had the principal care and custody of Jaime since his parents abandoned him, and that it would be in his best interests to remain in the United States and in her care.

Also filed on May 3, 2016, were affidavits of Ana and Jose G. In her May 2 affidavit, Ana stated that she and her husband lived in South Sioux City, Nebraska. In addition to making statements similar to the ones set forth in her petition as detailed above, Ana stated that she and her spouse were willing and able to provide a stable home and environment for Jaime. In his April 29 affidavit, Jose stated he lived in South Sioux City, and that he and Maria G. were the parents of Jaime, born in April 2001. Jose and Maria were preparing to permanently return to Mexico, but wanted Jaime to remain in the United States to complete his education. Jose was "not willing and refuse[d]" to take Jaime with them because they did not have "the resources, ability or desire to continue to care for him in Mexico." Jose planned to "leave [Jaime] in the United States and [had] no intention of returning to care for him." Jose opined that he and his wife were "incapable of providing for [Jaime's] emotional, physical, and medical needs" and that it would be in Jaime's best interests for the court to appoint Ana as his guardian.

On June 13, 2016, Jaime's GAL filed a report. In his report, the GAL stated that he had spoken with Jaime and Ana, and had reviewed all documents on file with the court. He noted,

[Jaime] has resided with [Ana] since his parents returned to Mexico at the beginning of May, 2016. [Jaime] states that his parents have been considering returning to Mexico since December, 2015, because they are unable to financially support [him] and his three younger siblings.

Based on the facts available, it appears that [Jaime] was left behind because he desired to remain, and he is the oldest child. Additionally, his three siblings are all U.S. citizens, meaning that [Jaime] is the only one who could not return if he went back to Mexico.

[Jaime] has lived in South Sioux City for six years and has not been back to Mexico since he was a baby. He states that he is unaware as to where in Mexico his parents have returned. [Jaime] was left with [Ana] because he is classmates/schoolmates with her son, and the two have known each other for approximately five years.

The GAL reported Jaime wanted a guardianship to be established. The GAL identified the "[c]hild's immigration status" as a possible barrier to permanency, but stated, "[t]his could be resolved by specifically finding that he has been abandoned and that reunification would not be in his best interest."

A guardianship hearing was held on August 2, 2016. Ana was present with counsel, as was Jaime and his GAL. Ana and the GAL testified. However, neither the affidavits of Ana and Jose (filed on May 3) nor the GAL report (filed on June 13) were offered or received into evidence at the hearing.

Ana testified (via an interpreter) she has known Jaime for a number of years, having first met him when he played soccer with her son. She confirmed that to the best of her knowledge, Jaime was born in April 2001, and was 15 years old at the time of the hearing. He was currently

living with Ana and her husband because his parents returned to Mexico. Ana spoke with Jaime's parents before they left for Mexico, at which time they said they wanted her to "watch over" Jaime. They did not give Ana any compensation or promise of payments in the future to care for Jaime. When asked if she knew whether Jaime's parents planned on returning to the United States, Ana responded, "I don't believe so at the moment." Later, when asked if she knew whether Jaime's parents planned to come back and visit him, Ana responded, "Well, they said no, because they have other kids that they took with them." She replied affirmatively when asked if Jaime's parents "left him with [her] for safekeeping." When asked if she knew whether Jaime planned to visit his parents in Mexico at any time in the future, she did not know; and when asked if she would forbid that, she replied, "I don't believe so." She asked the court to appoint her Jaime's guardian.

The GAL testified that after he was appointed GAL in this case, he interviewed Jaime and Ana and then filed a report with the court. The GAL believed that Jaime was an abandoned child within the meaning of Neb. Rev. Stat. "420245(1) [sic]," and believed it was in Jaime's best interests that Ana be appointed as his guardian. The Court then examined the GAL as follows.

Q[:] Did you interview any of the other children that [Jaime's] biological parents had?

A[:] No, they had returned to Mexico by that time.

Q[:] Don't you think it's a little unusual that they could take all these other children back and leave one?

A[:] I believe I know the reason why they did so.

Q[:] And why would that be?

A[:] Two reasons. First, . . . through my discussions with the ward [Jaime], they had indicated that they were having financial struggles that made it difficult for them to care for all their children. The other thing is that all of their other children are United States citizens by birth, so he's the only child that could not return to the United States upon reaching adulthood. So, it seems like it would be a practical decision for them to take the other children with them . . . and that he'd be the one left behind if they could [sic] afford all four.

Q[:] Would he be the oldest child?

A[:] Yes.

Q[:] Would he be able to work and help them afford things in Mexico?

A[:] I do not believe so, primarily because he has had almost no connection to Mexico. He has been in the United States, I believe, since the time he was about one year's old and he's never returned there since that time.

. . . .

Q[:] So, did you make any contact with the Nebraska Department of Health and Human Services to determine whether he should be reunited with his parents or returned to their parental home?

A[:] No, Your Honor.

. . . .

A[:] . . . Since this is a private action, I did not contact the Department.

Q[:] Wouldn't that have been a convenient thing to do?

A[:] I'm not sure what information, if any, the Department would be --

THE COURT: I guess my point is that we don't abandon children by finding people that we leave the child with for safekeeping. That's hardly abandonment. I think we do that in the course of babysitting or having our children maybe stay with a relative for a long time because they're having trouble. I'm having a little problem with that. And I don't think under Nebraska law that's abandonment.

[GAL]: I don't have a copy of the statute in front of me, but I believe that abandonment refers to failure to provide for these things.

THE COURT: Well, they haven't failed. They have provided somebody [sic] by finding somebody that will take care of him.

[GAL]: Yes, but they provide nothing in terms of support for the child other than, say, hey, let's ask someone who's a --

THE COURT: We do that -- that's done every day . . . I don't believe that's abandonment. Abandonment is that you don't take care of them and you leave them to fend for themselves. That has not been done in this case.

[GAL]: She's under no legal obligation to care for this child. If she'd so choose to, this child could be out on the streets and in our state's foster system like that.

THE COURT: Well, but nobody's contacted the Department to see if they could refer the child back to the home or anything of that nature, have they?

[GAL]: As far as I'm aware, there's no contact information or address for the parents. I asked [Jaime] if he was aware of where in Mexico his parents were and he had no idea where in that area that they were.

THE COURT: You don't think the consulate in Omaha could locate them? Especially since they have United States citizen children with them?

[GAL]: I could contact that consulate and find out if they could or not.

At that time both Ana and the GAL rested, and the court took the matter under advisement.

In its order filed on August 10, 2016, the court found there was a sufficient basis for the appointment of a guardian for Jaime. It further found "there are . . . less restrictive alternatives than the appointment of a guardian," "[h]owever, the appointment of a guardian is necessary because [Jaime's] parents have relocated to Mexico and placed the minor with [Ana], thereby suspending their parental rights of custody." The court then appointed Ana guardian of Jaime. At the end of its order, the court stated "the parents could have used a temporary power of attorney pursuant to [Neb. Rev. Stat. §] 30-2604 [(Reissue 2016)] as a less restrictive alternative rather than swear in their affidavits that they have 'abandoned' their child under 16 years of age in violation of [Neb. Rev. Stat. §] 28-705 [(Reissue 2016)], a class one misdemeanor."

The GAL filed a timely appeal, although it was incorrectly labeled as a petition in error. See Neb. Rev. Stat. §§ 30-1601, 30-2201, and 30-2217 (Reissue 2016). See, also, Neb. Rev. Stat. § 25-1912 (Reissue 2016).

ASSIGNMENTS OF ERROR

The GAL assigns that: (1) the county court erred by finding Jaime's parents could have used a temporary power of attorney instead of claiming abandonment; (2) the county court erred by failing to find Jaime had been abandoned pursuant to § 28-705 and/or § 43-245(1); and (3) the county court exceeded the scope of its authority and violated the U.S. Constitution by failing to find Jaime had been abandoned and reunification with his parents was not in his best interests.

STANDARD OF REVIEW

Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *In re Estate of Gsantner*, 288 Neb. 222, 846 N.W.2d 646 (2014). See, also, *In re Guardianship of D.J.*, 268 Neb. 239, 682 N.W.2d 238 (2004).

ANALYSIS

*County Court's Finding Regarding Temporary Power of Attorney.*

The GAL asserts that the county court "was clearly mistaken" in finding that the parents could have used a temporary power of attorney pursuant to § 30-2604 as a less restrictive alternative since a power of attorney under that statute cannot exceed six months and the parents stated their intention to permanently abandon their son.

Section 30-2604 states in relevant part: "A parent or a guardian of a minor or incapacitated person, by properly executed power of attorney, may delegate to another person, for a period not exceeding six months, any of his or her powers regarding care, custody, or property of the minor child or ward[.]"

Although the county court stated in its order that the parents could have used a temporary power of attorney as a less restrictive alternative to swearing in their affidavits that they have abandoned their child, this finding by the county court is not the only reason the court failed to find abandonment, as will be discussed further in our discussion of the GAL's next assigned error. Also, although a power of attorney executed under this statute expires after 6 months, nothing precludes a parent from executing a new power of attorney thereafter as may be needed. Given that Jaime and his parents were acquainted with Ana, arrangements could have been made to send a replacement power of attorney in 6 months, if needed. Jaime's parents evidently had enough of a relationship with Ana that they asked Ana to "watch over" Jaime before they left for Mexico and then left him with Ana for safekeeping. Further, although the county court pointed out this less restrictive option to appointing a guardian, it nevertheless proceeded to appoint Ana as guardian for Jaime. And as noted, to the extent the GAL suggests the county court's reference to this statute was its only basis for deciding there was no abandonment, the record reveals otherwise.

*County Court's Finding That Jaime Was Not Abandoned.*

A finding of abandonment was not required in order for Ana to be appointed Jaime's guardian, and the county court did in fact appoint her guardian. Regardless, the GAL contends that the county court should have found Jaime was abandoned, because without such a determination

Jaime is apparently ineligible for a special immigrant visa. According to the GAL's brief, the Immigration and Nationality Act "allocates a percentage of immigrant visas to individuals considered 'special immigrants,'" such as those who qualify for "Special Immigrant Juvenile status ('SIJS')." Brief for appellant at 5. And "[a]s part of the federal scheme pertaining to SIJS, there must be a finding by a state court that reunification with one or both parents is not viable due to abuse, neglect, or abandonment of the child or under similar bases under state law." *Id.*

Abandonment is defined in both Nebraska's Criminal Code and Juvenile Code. Section 28-705(1) of the Nebraska Criminal Code, referenced in the county court's order, provides that "[a]ny person who abandons and neglects or refuses to maintain or provide for . . . his or her child . . . commits abandonment of . . . child"; and § 28-705(2) defines "child" as "an individual under the age of sixteen years." The Nebraska Juvenile Code defines abandonment as "a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, and maintenance and the opportunity for the display of parental affection for the child"; a juvenile is defined as any person under the age of eighteen. Neb. Rev. Stat. § 43-245(1) and (2) (Reissue 2016). (This appears to be the statute referenced during the GAL's testimony, although it was mistakenly referred to as § 42-245(1), a statute which does not otherwise exist).

The county court found Jaime was not abandoned because his parents did not leave him to fend for himself, rather, they provided for him by finding somebody (Ana) who would take care of him. Additionally, the court was concerned the GAL had not contacted either the Nebraska Department of Health and Human Services or the Mexican Consulate in Omaha, Nebraska, to see if the parents could be located in order to reunite Jaime with them. The record also reveals that Ana spoke with Jaime's parents before they left, and all agreed that Ana would care for Jaime; it was also apparent from the record that all interested persons desired that Ana would be appointed Jaime's guardian. Jaime's parents left him with Ana for safekeeping. When Ana was asked if she knew whether Jaime planned to visit his parents in Mexico at any time in the future, she did not know; and when asked if she would forbid that, she replied, "I don't believe so." Given the forethought and planning involved for Ana to "watch over" Jaime, the county court's finding against abandonment conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

*Constitutional Arguments.*

The GAL argues that by failing to find Jaime had been abandoned and reunification with his parents was not in Jaime's best interests, the county court exceeded the scope of its authority and violated the U.S. Constitution. The GAL first argues the county court violated Jaime's right to equal protection by treating him differently because of his immigration status. U.S. Const. art. XIV, § 1 provides "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." See, also, *Plyler v. Doe*, 457 U.S. 202, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982) (illegal aliens may claim benefit of Fourteenth Amendment's guarantee of equal protection). Having reviewed the record, we find no evidence that the county court treated Jaime differently from any other similarly situated child. The court's statements regarding abandonment are detailed above. The statements

are generalized to all parents, not just to those without legal immigration status. For example, the court stated:

> [W]e don't abandon children by finding people that we leave the child with for safekeeping. That's hardly abandonment. I think we do that in the course of babysitting or having our children maybe stay with a relative for a long time because they're having trouble. I'm having a little problem with that. And I don't think under Nebraska law that's abandonment.

Nothing in the court's statements demonstrates that Jaime was treated differently because of his immigration status. We therefore find no violation of Jaime's rights to equal protection.

Finally, the GAL suggests the county court's failure to make the requested findings "violate[d] the supremacy clause by usurping the federal government's role in making immigration policy." Brief for appellant at 5. The GAL appears to be claiming that because the county court failed to make a specific finding that reunification with one or both parents is not viable due to abuse, neglect, or abandonment of Jaime, then this will affect Jaime's ability to acquire a special immigrant status, and this somehow "obstructs federal immigration policy." *Id*. However, federal immigration policy and Jaime's ability to get a special immigration visa is not relevant to our determination of whether the county court's finding regarding abandonment was proper, and we therefore decline to address this argument.

## CONCLUSION

Finding no error on the record, we affirm the county court's order.

AFFIRMED.